UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

| | | |
|---|---|---|
| In re: | : | |
| Placido Salazar & Maria N. Salazar | : | Case No. 10-10165-TJC |
| Debtors | : | Chapter 13 |
| _____ | | |
| Placido Salazar & Maria N. Salazar | : | |
| Plaintiffs | : | |
| vs. | : | Adv. Proc. No. _____ |
| First Residential Mortgage Services Corp., and Wells Fargo Bank, National Association, as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC2 | : : : | |
| Defendants | : | |
| _____ | | |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

1.  This Complaint is filed under the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter called "TILA"), to enforce the Plaintiffs' right to rescind a consumer credit transaction, to void the Defendants' security interest in the Plaintiffs' home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of TILA and Regulation Z, 12 C.F.R. § 226 (hereinafter called "Regulation Z").

## II. JURISDICTION

2. On January 5, 2010, Plaintiffs filed a voluntary petition under chapter 13 of the Bankruptcy Code (Title 11, United States Code). Therefore, the Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, as amended, and the Order of Reference made by the district court for this district (which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984). Jurisdiction is further conferred on the Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201. The Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. Sections 1334 and 157(b)(2). The Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. Section 1367.

3. This is a core proceeding.

## III. PARTIES

4. The Plaintiffs are the Debtors, Placido Salazar ("Placido") and Maria N. Salazar ("Maria") (individually or collectively, "Plaintiffs"). The Plaintiffs own and reside at the real property known as 604 Eldrid Drive, Silver Spring, Maryland (the "Property).

5. Defendant First Residential Mortgage Services Corporation (hereinafter "First Residential") is a New Jersey corporation engaged in the business of mortgage banking and loan correspondence with a principal place of business located at 570 Sylvan Ave., Englewood Cliffs, NJ 07632-3101. First Residential's Maryland Resident Agent is HSC Agent Services, Inc., 245 West Chase Street, Baltimore, MD 21201.

6.      First Residential is identified as the originating lender on Plaintiffs' Deed of Trust encumbering the Property that was recorded January 2, 2007, at Liber 83566, folio 646, among the Land Records of Montgomery County, Maryland (the "Deed of Trust").

7.      Defendant assignee Wells Fargo Bank, National Association, as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC2 (hereinafter "Wells Fargo"), is identified in that certain Deed of Appointment of Substitute Trustee, recorded on the Property October 28, 2009, at Liber 38259, folio 326, among the Land Records of Montgomery County, Maryland, as the owner and holder of the Note secured by the Deed of Trust.

8.      At all times relevant hereto, First Residential, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

## IV.  FACTS

9.      On or about November 20, 2006, Plaintiffs entered into a consumer credit transaction (hereinafter the "transaction") with First Residential in which the extended consumer credit was subject to a finance charge and which was initially payable to First Residential.

10.     Attached as PLAINTIFFS' EXHIBIT A is a true and accurate copy of the credit agreement evidencing the transaction (the "Note").

11.     As part of this consumer credit transaction, First Residential retained a security interest in the Property.

3

12. The security interest was not created to finance the acquisition or initial construction of Plaintiffs' home.

13. Attached as PLAINTIFFS' EXHIBIT B is a true and accurate copy of the mortgage evidencing First Residential's security interest (the "Deed of Trust").

14. The settlement agent for the transaction was Excellente Settlements, Inc. ("Excellente"). Attached as PLAINTIFFS' EXHIBIT C is a true and accurate copy of the HUD-1 Settlement Statement ("HUD-1") prepared by Excellente and delivered to Plaintiffs on November 20, 2006 when the transaction closed. Excellente's representative stated at the outset of the closing that he was running late and pressed for time, and rushed Plaintiffs through the process of signing the settlement papers.

15. Attached as PLAINTIFFS' EXHIBIT D is a true and accurate copy of Excellente's Deposit/Check Disbursement Statement for the transaction ("Disbursements").

16. The HUD-1 inaccurately states that closing took place at Excellente's office at 401 N. Washington Street, Suite 950, Rockville MD 20850. Closing actually took place after 5:00 p.m. at the office of First Residential's loan officer, Victoria Zambrano ("VZ"), located at 8757 Georgia Avenue, Suite 1320, Silver Spring, Maryland (the "Closing").

17. Plaintiffs were introduced to VZ by the real estate agent that helped them buy the Property in October 2005, and VZ recommended Excellente's closing services to Plaintiffs.

18. Plaintiffs do not speak or read English. VZ served as Plaintiffs' interpreter throughout the transaction.

19. Placido emigrated to the United States from Bolivia and is a permanent resident alien of the United States. Placido works as a driver for E&J Services Inc. of Laurel, Maryland, a

4

fencing contractor, since at least 2006. Maria works as a cook and housekeeper for St. Patrick Church in Rockville, Maryland, where she has been employed for the past four years. Plaintiffs are not well educated and are unsophisticated in business and financial matters.

20. All of the transaction documents signed by Plaintiffs at closing are in English. The subject loan is in Placido's name only, but the Deed of Trust was signed by both Plaintiffs since the Property is owned by Plaintiffs as husband and wife, tenants by the entirety.

21. The subject loan, which was originated to be securitized, is known as a "stated income, stated asset" ("SISA") loan, and was underwritten based on Placido's credit score, the loan to value ratio, and the belief that residential real estate in this country can only go up in value.

22. When Placido applied for the subject loan, he told VZ that Plaintiffs together grossed approximately $5,500 per month in income with each earning about half of the total.

23. VZ prepared the Uniform Residential Loan Application ("Application") that Placido signed at closing, a true and correct copy of which is attached as PLAINTIFFS' EXHIBIT E.

24. The Application lists Placido's gross monthly income as $9,500, and Maria's income as zero. VZ supplied the income information on the Application, which she got by searching www.salary.com for the average income of a person in Placido's line of work, rather than reporting Plaintiffs' actual income. Placido Salazar did not know when he signed the Application that it incorrectly stated his income.

25. VZ was acting within the scope of her employment, and in the manner she had been taught at First Residential, when she stated Plaintiffs' income on the Application.

26. First Residential never asked Placido for his tax returns, pay stubs, or any other evidence of his actual income.

27. The transaction resulted in little or no benefit to Plaintiffs, but cost them $7,443 in closing charges (in the form of equity skimming) that would not have been incurred had the transaction not been consummated, and decreased their debt service by only $61 per month. The interest rate on the first trust that was refinanced was a five-year ARM at a starting rate of 7.375%, a minimum rate of 2.375% and a maximum rate of 12.375% based on 6-month LIBOR index plus 2.25%, with the first change date on November 1, 2010. Had Plaintiffs not refinanced, their interest expense likely would drop significantly in November since LIBOR is currently at 0.39%.

28. First Residential assigned the obligation in question to Wells Fargo.

## V. FIRST CAUSE OF ACTION
## VIOLATION OF TRUTH IN LENDING ACT

29. Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

30. First Residential is a creditor within the meaning of § 1602(f) of the Truth in Lending Act (15 U.S.C. §§ 1601 *et seq*., hereinafter "TILA" or the "Act") and Regulation Z, 12 C. F.R. § 226.2(a)(17), and as such was required to provide notices of the right to rescind the transaction and to deliver material disclosures including, but not limited to, the amount financed, finance charge and annual percentage rate to Plaintiffs consistent with the Truth In Lending Act.

31. Plaintiffs are consumers within the meaning of § 1602(h) of the Act and Regulation Z, § 226.2(a)(11).

32. This consumer credit transaction was subject to the PLAINTIFFS' right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C. F.R. § 226.23).

33. In the course of this consumer credit transaction, First Residential violated 15 U.S.C. § 1635(a) and Regulation Z § 226.23(b) by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that clearly and conspicuously disclosed the date the rescission period expired. Instead, the notice incorrectly states the transaction date as October 26, 2006, rather than the actual transaction date of November 20, 2006.

34. Attached as PLAINTIFFS' EXHIBIT F is a true and accurate copy of the Notice of Right to Cancel the transaction delivered at Closing to Plaintiffs.

35. The disclosure statement issued in conjunction with this consumer credit transaction, and attached as PLAINTIFFS' EXHIBIT G, violated the requirements of TILA and Regulation Z in the following and other respects:

    a. By failing to include in the finance charge certain charges imposed by First Residential and payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z, § 226.4, thus improperly under-disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, § 226.18(d). Such amounts include, but are not limited to the following charges that are not "bona fide and reasonable," and therefore not properly excluded finance charges:

| HUD-1 LINE | AMOUNT CHARGED | DESCRIPTION | BONA FIDE | NOT BONA FIDE |
|---|---|---|---|---|
| 303 | $ 9,015.33 | Cash out | $ 8,905.50 | $109.83 |
| 1102 | $ 195.00 | Abstract | $ 179.00 | $16.00 |
| 1108 | $ 1,002.00 | Title Insurance | $ 532.50 | $469.50 |

| 1201 | $ 60.00 | Releases | $ 0.00 | $60.00 |

      i.  <u>Actual Disbursements</u>. Excellente's Disbursements (Pls' Ex. D) prove that the actual amount disbursed to Placido Salazar from the transaction loan proceeds was $8,905.50, or $109.83 less than stated on the HUD-1 (Pls' Ex. C), which difference consists of an extra day of interest in the amount of $76.30 (Line 901) and $33.53 in hidden bogus charges. Attached as PLAINTIFFS' EXHIBIT H is a true and correct copy of Excellente's unsigned HUD-1 printed 11/22/2006 showing the $76.30 in additional interest charged Placido Salazar, and First Residential's unsigned revised notice of right to cancel containing the correct transaction date, neither of which was ever presented to Plaintiffs. Excellente's Disbursements also prove that the $60 charged for government release recording charges (Line 1201) is bogus, and that the actual amount paid for the title abstract (Line 1102) was $179 rather than the $195 stated on the HUD-1. Plaintiffs were not aware, nor would a reasonable person have been aware, of these bogus charges until sometime after January 29, 2010, when Excellente produced its transaction file.

      ii.  <u>Title Insurance</u>.  Nearly half ($469.50) of the title insurance charges (Line 1108) in this transaction are bogus. Plaintiffs were charged $1,002 for the most expensive lender's title insurance policy possible (the Eagle policy at the original rate), rather than $532.50 for the least expensive lender's title insurance policy possible (standard policy with re-issue rate), in violation of Maryland Insurance Administration's Best Price Rule, which states that

> An individual insurer or insurance group consisting of multiple insurers must always place a consumer in the most favorably priced (least expensive) insurer / tier for which the consumer qualifies.

Attached as PLAINTIFFS' EXHIBIT I is a true and accurate copy of Maryland Insurance Administration's Best Price Rule. Attached as PLAINTIFFS' EXHIBIT J is a true and accurate copy of First American Title Insurance Company's Title Insurance Rates for the State of Maryland applicable on November 20, 2006, the date of the subject transaction.

        (a).   <u>Standard vs. Enhanced Coverage Rate</u>.  First Residential's closing instructions required only the less expensive ALTA Title policy, not an expanded or enhanced policy such as the Eagle policy.  Attached as PLAINTIFFS' EXHIBIT K is a true and accurate copy of First Residential's closing instructions for the transaction.

        (b).   <u>Original vs. Re-Issue Rate</u>.  Plaintiffs purchased an original owners' title insurance policy, insuring their interest in the Property in the amount of $410,000, when they bought the Property on October 17, 2005, thereby qualifying for First American's title insurance re-issue rates in the subject transaction.  Attached as PLAINTIFFS' EXHIBIT L is Plaintiffs' Land America Commonwealth's Owner's Residential Advantage Policy A79-Z005712 dated October 17, 2005. Excellente knew Plaintiffs were qualified for First American's lender's title insurance re-issue rate since Plaintiffs were refinancing two conventional Fannie Mae/Freddie Mac uniform purchase-money deeds of trust on the property dated October 17, 2005, each of which contains the notation at the top of the recorded deed of trust that title was insured by Commonwealth Land Title Ins. Co.  Plaintiffs also obviously qualified for First American's lender's title insurance re-issue rates since Plaintiffs' recorded deed to the property states that title was insured by Commonwealth Land Title Ins. Co.  Attached as PLAINTIFFS' EXHIBIT M is a true and accurate copy of the Plaintiffs' recorded deed, Excellente's land records search results dated 11/06/2006, and the first page and Schedule A of Plaintiffs' two

prior recorded deeds of trust on the property that were refinanced in the subject transaction, all produced by Excellente as part of its closing file for the transaction. Plaintiffs were not aware, nor would a reasonable person have been aware, of these bogus title insurance charges until sometime after July 9, 2009, when they engaged the services of attorney Robert J. Haeger.

        b.        By improperly including certain charges, in the amount financed, which are finance charges, including but not limited to those itemized in Paragraph 35(a) herein, First Residential improperly disclosed the amount financed in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b); and

        c.        By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z, § 226.22, First Residential understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(c).

36.    The disclosures improperly made by First Residential, as itemized in paragraph 35, are material disclosures as defined in the Truth in Lending Act, 15 U.S.C. § 1602(u), Regulation Z, § 226.23 n. 48.

37.    The finance charge and APR were under-disclosed by more than $35, the tolerance levels set forth in 15 U.S.C. §§ 1605(f) and 1635(i).

38.    By reason of those material violations of 15 U.S.C. § 1638, Plaintiffs have a right of rescission for three years from the date of consummation of the loan pursuant to 15 U.S.C. § 1635(f).

39. On November 19, 2009, Plaintiffs rescinded the transaction by sending a notice of rescission to Defendants, by fax where indicated, and by regular U.S. Mail, or certified U.S. Mail as indicated, return receipt requested, postage prepaid, as follows:

**Certified - Return Receipt Requested**
William F. Aldinger III, President
Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
299 South Main Street
Salt Lake City, UT 84111-1901

Wells Fargo Bank, National Association
c/o EMC Mortgage Corporation, Agent
909 Hidden Ridge #200
Irving, TX 75038

Wells Fargo Bank, National Association
c/o EMC Mortgage Corporation
2780 Lake Vista Drive
Lewisville, TX 75067-3884

First Residential Mortgage Services Corp.
570 Sylvan Avenue
Englewood Cliffs. NJ 07632
by US Mail and **Fax: 201-758-2800**

William F. Aldinger III, President
Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
Attn: BK Department, 1 Home Campus
P.O. Box 10335
Des Moines, IA 50328

Wells Fargo Bank, National Association, as
Trustee for Certificate holders of Bear
Stearns Asset Backed Securities I LLC,
Asset Backed Certificates, Series 2007-AC2
c/o Jacob Geesing, Esquire
Bierman, Geesing & Ward, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814
by US Mail and **Fax: 301-961-6545**

40. Attached as PLAINTIFFS' EXHIBIT N is a true and accurate copy of Plaintiffs' notice of rescission with the Broadcast Report evidencing fax transmission of the notice on November 19, 2009 ("Rescission Notice"). Attached as PLAINTIFFS' EXHIBIT O is a true and accurate copy of U.S. Postal Service Certified Mail Receipt postmarked 11/19/2009 for Article Number 7005 1820 0007 9088 0063. Attached as PLAINTIFFS' EXHIBIT P is a true and accurate copy of U.S. Postal Service Domestic Return Receipt evidencing delivery to Wells

Fargo of Article Number 7005 1820 0007 9088 0063. Article Number 7005 1820 0007 9088 0063 was an envelope which contained Plaintiffs' Rescission Notice.

41. Defendants First Residential and Wells Fargo received copies of the Plaintiffs' notice of rescission on or about November 19, 2006.

42. More than 20 calendar days have passed since the Defendants received copies of the Plaintiffs' notice of rescission.

43. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, including the security interest described in Paragraph 8, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2). Defendant Wells Fargo refused to honor the rescission by its agent's (EMC Mortgage Corp.) December 29, 2009 letter to Plaintiffs' counsel, Robert J. Haeger, a true and correct copy of which is attached as PLAINTIFFS' EXHIBIT Q.

44. The Defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

45. As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiffs for:

    a. Rescission of this transaction.

    b. Termination of any security interest in Plaintiffs' property created under the transaction.

    c. Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with this transaction.

    d.    Statutory damages of $2,000 for the disclosure violations.

    e.    Statutory damages of $2,000 for Defendants' failure to respond properly to Plaintiffs' rescission notice.

    f.    Forfeiture of return of loan proceeds.

    g.    Actual damages in an amount to be determined at trial.

    h.    Reasonable attorney's fees.

**WHEREFORE**, Plaintiffs prays that

    a.    Defendant's security interest in the Property be declared void;

    b.    the claim of Defendant be classified as wholly unsecured;

    c.    the Claim be reduced by all finance charges, insurance charges and all other charges as required by 12 C.F.R. § 226.23;

    d.    the Plaintiffs be awarded all actual and statutory damages under TILA, §§ 1635 and 1640, for Defendant's initial disclosure violations and for its failure to honor Plaintiffs' rescission;

    e.    the Claim be reduced by all actual and statutory damages that are awarded to Plaintiffs;

    f.    they be awarded their attorney's fees and costs; and

    g.    the Court order such additional relief as is necessary in the interest of justice.

Respectfully submitted,
*/s/ Robert J. Haeger, February 17, 2010*
Robert J. Haeger, Md. Fed. Bar No. 25434
Attorney for Plaintiffs
9535 Fern Hollow Way

Gaithersburg, MD 20886-1430
(301) 670-9787
www.haegerlaw.com

14